OPINION
{¶ 1} Defendant-appellant Terrel Brown appeals his conviction from the Stark County Court of Common Pleas on one count of robbery in violation of R.C. 2911.02(A)(3). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 14, 2001, appellant was indicted on one count of robbery in violation of R.C. 2911.02(A)(3), a felony of the third degree, two counts of receiving stolen property in violation of R.C.2913.51(A), felonies of the fifth degree, and six counts of forgery in violation of R.C. 2913.31(A)(3), felonies of the fifth degree. At his arraignment on November 16, 2001, appellant entered a plea of not guilty to the charges contained in the indictment.
 {¶ 3} After appellant moved to have the robbery charge tried separately from the remaining charges, a jury trial on the robbery charge commenced on January 10, 2002. The following evidence was adduced at trial.
 {¶ 4} On September 28, 2001, Clair Stephens was working as a cashier clerk at a Citgo Station on Cleveland Avenue in Canton, Ohio. At approximately 2:33 p.m., a black male came into the station and came around the side of the counter where Stephens was working. The man then opened the door leading to Stephens' cashier station and handed Stephens a note. The following testimony was adduced when Stephens was asked if he remembered what the note said:
 {¶ 5} "A. Not exactly. I know something along the lines of he wanted the money now and like I said, I read the note. When he showed it to me I thought he was mute and could not talk. I told him just wait a second. There was people, at least one other lady in the store five or six feet away.
 {¶ 6} "And all of a sudden it just hit me that the note said give me the money. So I looked again and that's what it said.
 {¶ 7} "Q. Did he say anything to you?
 {¶ 8} "A. Said hurry up and he wanted the money and he told me to hurry up and I wasn't fast enough or something, I don't know, but he told me to hurry it up, that I didn't want to get hurt. And I said okay." Transcript at 96.
 {¶ 9} Stephens did not see a gun or other type of weapon on the man nor did the man, through his actions, lead Stephens to believe that he had a weapon. Stephens, however, testified that he felt threatened by the man since he didn't "know what people are going to do" and since he did not want to find out if the man, in fact, had a weapon. Transcript at 97. Stephens further testified that he thought that "it was very possible that he could harm me if I didn't give him the money." Transcript at 107. Stephens then gave the man, who was a couple of feet away from him, the money that was in the cash register, which totaled approximately $300.00.
 {¶ 10} After the man exited the station, Stephens saw him get into a black Oldsmobile. Stephens was able to copy the car's license plate number. Once the police arrived on the scene, they took a surveillance tape into custody and, after obtaining the car's license plate number from Stephens, identified appellant as the owner of the Oldsmobile. In addition, Stephens immediately picked appellant's picture out of a photo array prepared by Sergeant Jack Angelo a few days after the incident.
 {¶ 11} When appellant was stopped in his car a few days later and was arrested, he had over $300.00 in his shoe.
 {¶ 12} At the conclusion of the evidence and the end of deliberations, the jury, on January 10, 2002, found appellant guilty of robbery as charged in the indictment. Thereafter, on January 14, 2002, appellant entered a plea of guilty to the remaining charges in the indictment. As memorialized in an entry filed on January 17, 2002, appellant was sentenced to a definite four year prison sentence for robbery. The trial court, in its entry, ordered that such sentence be served consecutively to appellant's sentence in a 1998 case. In addition, the trial court ordered that appellant serve six months in prison for each of the remaining forgery and receiving stolen property counts. Finally, the trial court ordered the same to run concurrently with appellant's four year prison term for robbery.
 {¶ 13} It is from the trial court's January 17, 2002, entry that appellant prosecutes his appeal, raising the following assignments of error:
 {¶ 14} "I. APPELLANT WAS IMPROPERLY CONVICTED OF ROBBERY AS A FINDING OF GUILTY TO THE CHARGE OF ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 15} "II. THE COURT ERRED BY PERMITTING THE JURY TO CONSIDER THE CHARGE OF ROBBERY AND SHOULD HAVE LIMITED THE JURY'S CONSIDERATION TO THE CRIME OF THEFT."
 I {¶ 16} Appellant, in his first assignment of error, argues that his conviction for robbery in violation of R.C. 2911.02(A)(3) is against the manifest weight of the evidence. Appellant specifically contends that appellee "failed to prove the element of force which is a prerequisite to a finding of guilty to a charge of robbery." We disagree.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed . . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.
 {¶ 18} In the case sub judice, appellant was convicted of robbery in violation of R.C. 2911.02(A)(3). Such section states as follows:
 {¶ 19} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 20} "(3) Use or threaten the immediate use of force against another."
 {¶ 21} Pursuant to R.C. 2901.01(A), force is defined as "any violence, compulsion, or constraint physically exerted by any means or against a person or thing." The "use or threat of immediate use of force against another" requirement is satisfied "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will by virtue of the influence of the terror impressed." State v. Davis (1983), 6 Ohio St.3d 91, 94, 451 N.E.2d 772. The Ohio Supreme Court, in Davis, stressed that this was an objective, not a subjective, standard.
 {¶ 22} As is stated above, appellant asserts that his conviction for robbery is against the manifest weight of the evidence since the element of force was not proven. Appellant specifically points out that it is undisputed that appellant did not use a gun or other weapon, that Stephens testified that appellant's actions did not leave him to believe that appellant had a weapon, and that appellant did not yell at or speak to Stephens. However, as is stated above, at the trial in this matter, Clair Stephens, the Citgo clerk, testified that appellant, after giving him the note, "told me to hurry up, that I didn't want to get hurt." Transcript at 96. Stephens also testified that he felt threatened since he "didn't know what people are going to do" and that he thought that it was "very possible that he could harm me if I didn't give him the money." Transcript at 97, 107. Stephens further testified that he would not have given appellant the money if he had not felt threatened and that he did not want to find out if appellant had a gun or other weapon on his person. At trial, the jury had the opportunity to view the surveillance videotape of the robbery and thus, could observe both appellant's and Stephens' demeanors during the same.
 {¶ 23} Based on the foregoing, we find that the jury, which was in the best position to assess Stephens' credibility, did not lose its way in finding that appellant made a threat of immediate force in carrying out the theft of the Citgo station.
 {¶ 24} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 25} Appellant, in his second assignment of error, argues that the trial court erred in allowing the jury to consider the crime of robbery when the trial court "should have limited the jury's consideration to the crime of theft." In essence, appellant argues that his conviction for robbery was against the sufficiency of the evidence and that, for such reason, the trial court should have granted appellant's motion for acquittal at the conclusion of the case.
 {¶ 26} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Jenks, supra, at paragraph two of the syllabus.
 {¶ 27} After viewing the evidence in a light most favorable to the prosecution, we find that, based upon the facts set forth in detail in the statement of facts above, any rationale trier of fact could have found that appellant threatened the use of force in committing a theft offense. R.C. 2911.02(A)(3). As is stated above, appellant, during the theft of the Citgo station, told Stephens to "hurry up" to avoid getting hurt. Moreover, Stephens, during his testimony, indicated that he felt threatened and believed that, if he did not comply, he would get hurt.
 {¶ 28} We concur with appellee that based on such evidence, any rationale trier of fact could have found that Stephens' fear "was of such a nature as in reason and common experience is likely to induce a person to part with property against his will and temporarily suspend his power to exercise his will . . ." See Davis, supra.
 {¶ 29} Appellant's second assignment of error is, therefore, overruled.
 {¶ 30} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
By Edwards, J., Gwin, P.J. and Wise, J. concurs.